LEONID P. KRIVOLENKOV
Plaintiff Pro Se
11411 NE 47th Court
Vancouver, WA 98686
Cell Phone: (503) 339-4069
leokrivolenkov250k@gmail.com

FI 31 AUG '26 12:50USDC-ORP

Filed on 08/31/2026

**UNITED STATES DISTRICT COURT**

**DISTRICT OF OREGON**

Portland Division

LEONID P. KRIVOLENKOV

Plaintiff,

v.

MATT BIGONI, et al.,

Defendant.

**Case No: 3:25-cv-01073-JR**

**AMENDED DECLARATION OF LEONID P. KRIVOLENKOV IN SUPPORT OF PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS MATT BIGONI, GARRETT GRIMM, AND CLACKAMAS COUNTY'S MOTION FOR SUMMARY JUDGMENT**

## DECLARATION

I, Leonid P. Krivolenkov, Plaintiff Pro se under penalty of perjury, declare as follows:

1. I am a United States Citizen residing in Clark County Washington, and I am making this declaration for use as evidence in this case. I have personal knowledge of the events surrounding this case. I have personal knowledge of everything in this declaration, and I am competent to testify to anything in this declaration if necessary.

2. All previously made declarations as to Complaint attached exhibits are incorporated.

3. Attached as Exhibit 1 is a true and accurate copy of the Arrest Report including Affidavit of Probable Cause as one single document.

4. Attached as Exhibit 2 is a true and accurate copy of the video recording, recorded by the Plaintiff, Leonid P. Krivolenkov, on DVD.

5. Attached as Exhibit 3 is a true and accurate copy of the BWC of the defendant deputy Matt Bigoni, is a DA discovery release, on DVD.

6. Attached as Exhibit 5 is a true and accurate copy of the news article authored by Aimee Green, The Oregonian.

7. Attached as Exhibit 6 is a true and accurate copy of Memorandum, from: Nicole Hermann, to: Mike Schmidt (Former MCDA), Subject: Officer Involved Protest Case Review.

8. Attached as Exhibit 7 is a true and accurate copy of the Information of the District Attorney, Mike Shchidt District Attorney Multnomah County, Oregon, filed by Edward G. Miller, DDA.

9. Attached as Exhibit 8 is a true and accurate copy of Judgment of Dismissal, submitted by: Alexandra Jansky and signed by a Multnomah County Circuit Court Judge.

10. On August 20, 2024, on/or about 7:20 pm, at/or near 12505 NE Halsey St. and NE 126th Ave, Portland, Oregon, Multnomah County, Mr. Krivolenkov observed a large presence of police and civilian activity. Mr. Krivolenkov prepared his video recording equipment and device (cell phone) and proceeded to walk down the sidewalk towards the scene and stopped at the corner of NE Halsey and NE 126th Ave., the location is a "traditional public forum" public property, and public forum, i.e., sidewalk. Mr. Krivolenkov proceeded to cross for better view.

11. On August 21, 2024, District Attorney Multnomah County, Oregon, by Edward G. Miller, DDA filed a "Information" charging Mr. Krivolenkov with Count 1, Interfering with a peace officer or parole and probation officer, ORS 162.247, a Class A Misdemeanor. (*See* Pl., Compl., Attch., Ex. 7).

12. On November 26, 2024, Alexsandra Jansky submitted Judgment of Dismissal, the MCCCJ Cheryl A. Albrecht dismissed the matter, i.e., criminal case and charge(s) of Interfering with a Pease Officer or Parole and Probation Officer. (*See* Pl., Compl., Attch., Ex. 8).

13. On June 23, 2025, Mr. Krivolenkov filed a lawsuit in this Court for violation of his clearly established Constitutional Rights pursuant to 42 U.S.C. § 1983, against all named Defendant's, and for the purpose of this response, against Matt Bigoni, Garret Grimm, and Clackamas Couty.

14. Defendant Hubert yelled "hey you got to stay back there" simply waiving his hand. At the relevant time of the incident, he was not wearing a marked police uniform, and his police badge was not visible to plaintiff from the SE corner of the street.

15. Hubert did not identify himself as a police officer, parole, and/or probation officer. He did not articulate that the command he was giving is a lawful order.

16. Plaintiff did not have any knowledge of the presence of a firearm, despite his own recording that may have captured an object "appearing" to be a firearm.

17. Defendant Bigoni, aka a Violent Criminal, is a clearly documented liar, with a well-established history of misconduct, use of excessive force, and threats of violence with a deadly weapon. (*See* Pl., Compl., Attch., Ex. 5).

18. Defendant Sgt. Kerwin objectively stated, """relax stop resisting… you're under arrest I don't know why I'm just here."". (*See* Pl., Compl., Pg. 9, L. 43, Ex. 2).

19. Begoni submitted a declaration in bad faith, making false statements in his declaration, with the knowledge and assistance of his attorney(s) Billy J. Williams and Shawn A. Lilligren, Clackamas County Oregon attorneys for County Defendants.

20. Defendant deputy Bigoni stated to Plaintiff: "stand here don't go over there or you'll be under arrest." (*See* Pl., Compl, Pg. 6-7, L. 30, Attch., Ex. 2). Bigoni then proceeded to unlawfully and falsely arrest him, while Plaintiff was complying by standing at a place where he was advised to go to, in retaliation, and in response to having being verbally challenged by the Plaintiff.

21. The Court in the criminal case did not find Probable Cause for the arrest of Mr. Krivolenkov for any alleged crime. (*See* Pl., Compl., Attch., Ex. 5, also *see* Pl., Compl., Attch., Ex. 1, P. 9-10).

22. Def. Bigoni did not complete the Affidavit of Probable Cause. (See Pl., Compl., Attch., Ex. 1).

I DECLARE UNDER PENALTY OF PERJURY THAT THE FORGOING IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE AND BELIEF AND THAT THE STATEMENTS ARE MADE IN GOOD FAITH

Submitted,

DATED this **31st** day of August, 2026.

Leonid P. Krivolenkov
Plaintiff Pro se

# CERTIFICATE OF SERVICE

I hereby certify that on August 31, 2026, I served a true and accurate copy(s) of the forgoing;

**AMENDED DECLARATION OF LEONID P. KRIVOLENKOV IN SUPPORT OF PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS MATT BIGONI, GARRETT GRIMM, AND CLACKAMAS COUNTY'S MOTION FOR SUMMARY JUDGMENT**

| | |
|---|---|
| To: SHAWN A. LILLEGREN, ACC<br>Office of Clackamas County Counsel<br>2051 Kaen Road<br>Oregon City, OR 97045-1819<br>*Of Attorney for Clackamas County Defendants* | To: DANIEL A. SIMON, SDCA<br>Portland City Attorney's Office<br>1221 SW 4th Ave., Rm. 430<br>Portland, OR 97204<br>*Of Attorney for City of Portland Defendants* |

By the following method as indicated:

**X** - by **mailing First-Class** to said person(s) a true and accurate copy thereof, said copy placed in an individual sealed envelope, postage paid and addressed to said person(s) as shown above, and deposited at the USPS on the date set forth above.

Submitted,

DATED this **31st** day of August, 2026.

Leonid P. Krivolenkov
Plaintiff Pro se

But thus says the Lord:

"Even the captives of the mighty shall be taken away,

And the prey of the terrible be delivered; For I will contend with him who contends with you,
And I will save your children.

I will feed those who oppress you with their own flesh,
And they shall be drunk with their own blood as with sweet wine.
All flesh shall know That I, the Lord, am your Savior,
And your Redeemer, the Mighty One of Jacob." Isaiah 49:25-26 NKJV

Clackamas
2223 KAEN RD | OREGON CITY, OR 97045 | P: 503.785.5000

**Case #** 24-017360 **- Arrest Report**

| REPORT DATE / TIME | | EVENT START DATE / TIME - EVENT END DATE / TIME |
|---|---|---|
| 08/20/2024 08:30 | | 08/20/2024 07:35, |

PRIMARY REPORTER
Bigoni, Matt

ASSISTING PERSONNEL / TYPE(S)
, /

REPORT TAKEN LOCATION

## NARRATIVE

Lodged at Multnomah County Jail. PC statement filled out in jail. See offense incident for further details.

**ARREST #** 10-24-006112

| ARREST DATE / TIME | ARRESTING ORGANIZATION | ARREST TYPE |
|---|---|---|
| 08/20/2024 07:35 | Clackamas County Sheriff's Office - 10 | PC |

ARRESTING OFFICER
Matt Bigoni

TACTICS USED

| REPORTING OFFICER SIGNATURE / DATE | SUPERVISOR SIGNATURE / DATE |
|---|---|
| Matt Bigoni # 50904 , | Erik McGlothin # 44746 , |
| | PRINT NAME |
| Matt Bigoni | Erik McGlothin |

**EXHIBIT 1**
**PAGE 1 of 12**

*DEFENDANT*

| DEFENDANT NAME (LAST, FIRST MIDDLE) | SEX |
|---|---|
| Krivolenkov, Leonid P | M |

| DOB / ESTIMATED AGE RANGE | RACE / ETHNICITY |
|---|---|
| 1978-[redacted] | W / |

| PHONE NUMBER | EMAIL ADDRESS |
|---|---|
| | |

HOME ADDRESS
11411 NE 47TH CT, VANCOUVER, WA 98686

ARREST STATISTICS

*ARREST LOCATION*

LOCATION NAME / STREET ADDRESS/LOCATION NAME / APT, UNIT, STE / DESCRIPTION
12505 NE HALSEY ST,

| CITY | STATE | ZIP | COUNTRY CODE |
|---|---|---|---|
| PORTLAND | OR | 97230 | US |

| INTERSECTION STREET 1 | INTERSECTION STREET 2 |
|---|---|
| | |

| LOCATION CATEGORY | DISPATCH AREA / DISTRICT / ZONE | PUBLIC / PRIVATE |
|---|---|---|
| 13 | OOJ / OOJ / OOJ | |

| CHARGES - 1 | COUNT |
|---|---|
| INTERFERING WITH PEACE OFFICER \| 162.247 | 1 |

| OFFENSE CASE # | OFFENSE CODE | OFFENSE START DATE | OFFENSE END DATE |
|---|---|---|---|
| 24-017360 | INTERFERING WITH PEACE OFFICER \| 162.247 | 08/20/2024 07:35 | |

OFFENSE LOCATION
12505 NE HALSEY ST, PORTLAND OR 97230

| | | | JUVENILE DISPOSITION | JUVENILE DISPOSITION DATE / TIME |
|---|---|---|---|---|
| | | | | |

ARREST DISPOSITION

- ☐ ROR Parents
- ☐ Lockup
- ☐ Release on Bail
- ☐ Release Own Recognizance
- ☐ Citation Release

| REPORTING OFFICER SIGNATURE / DATE | SUPERVISOR SIGNATURE / DATE |
|---|---|
| Matt Bigoni # 50904 , | Erik McGlothin # 44746 , |
| PRINT NAME | PRINT NAME |
| Matt Bigoni | Erik McGlothin |

## Case # 24-017360 - Arrest Report

| REPORT DATE / TIME | EVENT START DATE / TIME - EVENT END DATE / TIME | PRIMARY REPORTER |
|---|---|---|
| Aug 20, 2024 20:30 | Aug 20, 2024 19:35 | Matt Bigoni #50904 |

ASSISTING PERSONNEL / TYPE(S)
Garrett Grimm #53469 (Involved Officer)

## NARRATIVE

Lodged at Multnomah County Jail. PC statement filled out in jail. See offense incident for further details.

## ARREST #10-24-006112 (PROBABLE CAUSE)

| ARREST DATE / TIME | ARRESTING ORGANIZATION | ARREST TYPE |
|---|---|---|
| Aug 20, 2024 19:35 | Clackamas County Sheriff's Office - 10 | Probable Cause |

ARRESTING OFFICER
Matt Bigoni #50904

*DEFENDANT*



| DEFENDANT NAME (LAST, FIRST MIDDLE) | SEX |
|---|---|
| D-1 Krivolenkov, Leonid P | Male |

| DOB / ESTIMATED AGE RANGE | RACE / ETHNICITY |
|---|---|
| 1978-12-10 | White |
| PHONE NUMBER | EMAIL ADDRESS |
| | |

HOME ADDRESS
11411 NE 47TH CT, VANCOUVER, WA 98686

DEFENDANT WAS ARMED WITH
Unarmed

*ARREST LOCATION*

LOCATION NAME / STREET ADDRESS/LOCATION NAME / APT, UNIT, STE / DESCRIPTION
12505 NE HALSEY ST

| CITY | STATE | ZIP | COUNTRY CODE |
|---|---|---|---|
| PORTLAND | OR | 97230 | US |

| LOCATION CATEGORY | INCORP/UNINCORP / DISTRICT/CITY / CITY BEAT / NEIGHBORHOOD / SUBDIVISION 5 |
|---|---|
| Highway/ Road/ Alley/ Street/ Sidewalk | Out of Jurisdiction / Out of Jurisdiction / Out of Jurisdiction / OOJ |

*CHARGES*

| CHARGES - 1 | | COUNT |
|---|---|---|
| INTERFERING WITH PEACE OFFICER \| 162.247 | | 1 |
| OFFENSE CASE # | OFFENSE CODE | OFFENSE START DATE |
| 24-017360 | INTERFERING WITH PEACE OFFICER \| 162.247 | Aug 20, 2024 19:35 |

| CHARGES - 2 | | COUNT |
|---|---|---|
| RESISTING ARREST-DISORDERLY CONDUCT \| 162.315-4 | | 1 |
| OFFENSE CASE # | OFFENSE CODE | OFFENSE START DATE |
| 24-017360 | RESISTING ARREST-DISORDERLY CONDUCT \| 162.315-4 | Aug 20, 2024 19:35 |

| REPORTING OFFICER SIGNATURE / DATE | SUPERVISOR SIGNATURE / DATE |
|---|---|
| Matt Bigoni #50904 Aug 20, 2024 20:36 (e-signature) | Erik McGlothin #44746 Aug 21, 2024 00:07 (e-signature) |
| PRINT NAME | PRINT NAME |
| Matt Bigoni #50904 | Erik McGlothin #44746 |

# Case # 24-017360 - Offense/Incident Report Cover Sheet

| REPORT DATE / TIME | INCORP/UNINCORP / DISTRICT/CITY / CITY BEAT / NEIGHBORHOOD / SUBDIVISION 5 | EVENT START DATE / TIME - EVENT END DATE / TIME |
|---|---|---|
| Aug 20, 2024 20:35 | | Aug 20, 2024 19:20 |

## OFFENSE-1

| OFFENSE CODE | |
|---|---|
| INTERFERING WITH PEACE OFFICER \| 162.247 | |
| **OFFENSE LOCATION** | **OFFENSE START DATE** |
| 12505 NE HALSEY ST, PORTLAND, OR 97230 | Aug 20, 2024 19:35 |

## OFFENSE-2

| OFFENSE CODE | |
|---|---|
| RESISTING ARREST-DISORDERLY CONDUCT \| 162.315-4 | |
| **OFFENSE LOCATION** | **OFFENSE START DATE** |
| 12505 NE HALSEY ST, PORTLAND, OR 97230 | Aug 20, 2024 19:35 |

## INVOLVED PERSONS

| INVOLVEMENT | NAME | HOME ADDRESS | DOB / ESTIMATED AGE RANGE | RACE | SEX |
|---|---|---|---|---|---|
| S-1 | Leonid P Krivolenkov | 11411 NE 47TH CT<br>VANCOUVER, WA 98686 | 1978-[redacted] | White | Male |

## INVOLVED ORGANIZATIONS

| INVOLVEMENT | NAME | ADDRESS |
|---|---|---|
| V-1 | LAW ENFORCEMENT | |

## INVOLVED PROPERTY

| STATUS | ITEM CATEGORY | DESCRIPTION |
|---|---|---|
| Seized/Evidence | Axon Video | BWC - Video - Bigoni |
| Seized/Evidence | Axon Photo | Photos |

| REPORTING OFFICER SIGNATURE / DATE | SUPERVISOR SIGNATURE / DATE |
|---|---|
| Matt Bigoni #50904 Aug 20, 2024 23:51 (e-signature) | Erik McGlothin #44746 Aug 21, 2024 00:06 (e-signature) |
| **PRINT NAME** | **PRINT NAME** |
| Matt Bigoni #50904 | Erik McGlothin #44746 |

## Case # 24-017360 - Offense/Incident Report

| REPORT DATE / TIME | EVENT START DATE / TIME - EVENT END DATE / TIME | PRIMARY REPORTER |
|---|---|---|
| Aug 20, 2024 20:35 | Aug 20, 2024 19:20 | Matt Bigoni #50904 |

ASSISTING PERSONNEL / TYPE(S)

Garrett Grimm #53469 (Involved Officer)

### NARRATIVE

Mentioned / Witnesses:

PPB Officer Hubert #28376

PPB Sgt. Kerwin #48163

On 08/20/24 around 1840 I was assisting the Portland Police Bureau with a stolen vehicle operation in East Portland. I was riding as the passenger in a marked Clackamas County patrol SUV with Deputy Grimm as my partner.

PPB Officers stopped a vehicle at NE 126th Ave / NE Halsey St. The passenger ran from the vehicle (refer to case # 24-017355). Deputy Grimm and I located the passenger and transported him back to the stop location. Meanwhile, PPB Officers located a gun in the stopped vehicle. While awaiting a DNA swab, the firearm was sitting on the trunk of the stopped vehicle. The firearm was loaded with a 30 round magazine.

While awaiting DNA swabs and speaking with PPB Officers, I noticed a man using a cell phone to presumably video us, from the SE corner of NE 126th Ave / NE Halsey St, while we were on the SW corner, about 20 feet away. I did not engage with the man.

The man started walking across the street toward us. PPB Officer Hubert told the man not to come over to us, but the man disregarded this order. He made his way to the corner where we were standing and walked past me, and behind a group of 4 officers / deputies. He was now about 10-15 feet away from where the loaded firearm was sitting. All Officers / Deputies stopped what they were doing to focus attention on the man. We were currently investigating the crime of felon in possession of a firearm, and the man was now interfering with our ability to safely conduct our business, as we had to focus on him after he disregarded Officer Hubert's instructions and walked in between Officers / Deputies in the direction of the loaded firearm.

At this point I had probable cause for the man for ORS 162.247 - Interfering with a peace officer.

I grabbed the man's left wrist and I could feel and see his arm muscles tensing up. I utilized an escort hold and walked him back across the street to the SE corner. As I was still holding onto his wrist he whipped his arm away from me, turned towards me and squared up, which I know is a pre-attack indicator. The man was still filming me with his cell phone on an extendable "selfie stick" in his right hand, which could easily be used as a weapon to strike me.

At this point I told the man he was under arrest. I grabbed his left arm, but he pulled it away from me, turned, and attempted to run away, eastbound on the south sidewalk of NE Halsey. I was just a step

| REPORTING OFFICER SIGNATURE / DATE | SUPERVISOR SIGNATURE / DATE |
|---|---|
| Matt Bigoni #50904 Aug 20, 2024 23:51 (e-signature) | Erik McGlothin #44746 Aug 21, 2024 00:06 (e-signature) |
| PRINT NAME | PRINT NAME |
| Matt Bigoni #50904 | Erik McGlothin #44746 |

behind the man and was able to grab him quickly around the shoulders and tackle him to the ground, to affect the arrest and prevent his escape. I landed on top of him and placed him into handcuffs with the assistance of Deputy Grimm and PPB Sgt. Kerwin, without any further resistance.

I walked the man back to my vehicle and I Mirandized him, but he did not answer when asked if he understood his rights. I located his Washington State ID, which identified him as Leonid Krivolenkov. Records showed that his Oregon DL was suspended, despite having driven to the location.

Leonid's right arm was scraped and bleeding around his elbow. I photographed his injury. My right elbow was scraped and bleeding. Sgt. Kerwin used my phone to take photos of my injury.

Deputy Grim and I transported Leonid to the Multnomah County Detention Center. While there, Leonid was uncooperative and placed into an isolation cell.

My BWC was not originally recording this incident. Once our subject from the original traffic stop was placed in the back of Deputy Grimm's recorded police vehicle, I deactivated my camera, which is in-line with CCSO policy.

The incident with Leonid was rapidly evolving, so my camera wasn't reactivated until I fell to the ground (by my camera button pressing on Leonid's body). Due to this, the 30 second pre-record function captured the incident, but does not have audio until around the time we went to the ground.

Sgt. McGlothin was notified of this use of force.

I uploaded photos of injuries to evidence.com.

Outside distribution: Multnomah County District Attorney's Office

Action Recommended: Cleared by arrest

## OFFENSE-1

| | | |
|---|---|---|
| OFFENSE CODE<br>INTERFERING WITH PEACE OFFICER \| 162.247 | | |
| OFFENSE START DATE<br>Aug 20, 2024 19:35 | SUSPECTED COMPUTER/ HANDHELD DEVICE USE<br>☐ YES ☒ NO | SUSPECTED ALCOHOL CONSUMPTION<br>☐ YES ☒ NO |
| SUSPECTED DRUG USE<br>☐ YES ☒ NO | | |

*OFFENSE LOCATION*

| | | | |
|---|---|---|---|
| LOCATION NAME / STREET ADDRESS/LOCATION NAME / APT, UNIT, STE / DESCRIPTION<br>12505 NE HALSEY ST | | | |
| CITY<br>PORTLAND | STATE<br>OR | ZIP<br>97230 | COUNTRY CODE<br>US |
| LOCATION CATEGORY<br>Highway/ Road/ Alley/ Street/ Sidewalk | INCORP/UNINCORP / DISTRICT/CITY / CITY BEAT / NEIGHBORHOOD / SUBDIVISION 5<br>Out of Jurisdiction / Out of Jurisdiction / Out of Jurisdiction / OOJ | | |

*VICTIMS-1*

VICTIMS-1 NAME
V-1 LAW ENFORCEMENT

| | |
|---|---|
| REPORTING OFFICER SIGNATURE / DATE<br>Matt Bigoni #50904 Aug 20, 2024 23:51 (e-signature) | SUPERVISOR SIGNATURE / DATE<br>Erik McGlothin #44746 Aug 21, 2024 00:06 (e-signature) |
| PRINT NAME<br>Matt Bigoni #50904 | PRINT NAME<br>Erik McGlothin #44746 |

ORGANIZATION TYPE
Government

*SUSPECTS-1*

| SUSPECTS-1 NAME (LAST, FIRST MIDDLE) | DOB / ESTIMATED AGE RANGE |
|---|---|
| S-1 Krivolenkov, Leonid P | 1978-[redacted] |

| SEX | RACE / ETHNICITY |
|---|---|
| Male | White |

HOME ADDRESS
11411 NE 47TH CT, VANCOUVER, WA 98686

## OFFENSE-2

OFFENSE CODE
RESISTING ARREST-DISORDERLY CONDUCT | 162.315-4

| OFFENSE START DATE | SUSPECTED COMPUTER/ HANDHELD DEVICE USE | SUSPECTED ALCOHOL CONSUMPTION |
|---|---|---|
| Aug 20, 2024 19:35 | ☐ YES ☒ NO | ☐ YES ☒ NO |

SUSPECTED DRUG USE
☐ YES ☒ NO

*OFFENSE LOCATION*
LOCATION NAME / STREET ADDRESS/LOCATION NAME / APT, UNIT, STE / DESCRIPTION
12505 NE HALSEY ST

| CITY | STATE | ZIP | COUNTRY CODE |
|---|---|---|---|
| PORTLAND | OR | 97230 | US |

| LOCATION CATEGORY | INCORP/UNINCORP / DISTRICT/CITY / CITY BEAT / NEIGHBORHOOD / SUBDIVISION 5 |
|---|---|
| Highway/ Road/ Alley/ Street/ Sidewalk | Out of Jurisdiction / Out of Jurisdiction / Out of Jurisdiction / OOJ |

*VICTIMS-1*
VICTIMS-1 NAME
V-1 LAW ENFORCEMENT

ORGANIZATION TYPE
Government

*SUSPECTS-1*

| SUSPECTS-1 NAME (LAST, FIRST MIDDLE) | DOB / ESTIMATED AGE RANGE |
|---|---|
| S-1 Krivolenkov, Leonid P | 1978-[redacted] |

| SEX | RACE / ETHNICITY |
|---|---|
| Male | White |

HOME ADDRESS
11411 NE 47TH CT, VANCOUVER, WA 98686

## VEHICLE / PROPERTY & ITEMS SUMMARY

| DESCRIPTION / MAKE / MODEL / COLOR | STATUS / DATE / REASON FOR CUSTODY | VIN # / SERIAL # | QTY. | TOTAL ($) VALUE |
|---|---|---|---|---|
| BWC - Video - Bigoni / None | Seized/Evidence / Aug 20, 2024 / Evidence | | | UNKNOWN |
| Photos / None | Seized/Evidence / Aug 20, 2024 / Evidence | | | UNKNOWN |

## PROPERTY & ITEMS ADDENDUM

*24-017360-1 OTHER ITEM - BWC - VIDEO - BIGONI*

ITEM CATEGORY
Axon Video

DESCRIPTION
BWC - Video - Bigoni

COLOR
None

| REPORTING OFFICER SIGNATURE / DATE | SUPERVISOR SIGNATURE / DATE |
|---|---|
| Matt Bigoni #50904 Aug 20, 2024 23:51 (e-signature) | Erik McGlothin #44746 Aug 21, 2024 00:06 (e-signature) |
| PRINT NAME | PRINT NAME |
| Matt Bigoni #50904 | Erik McGlothin #44746 |

| STATUS | STATUS DATE | TOTAL ($) VALUE | IN POLICE CUSTODY |
|---|---|---|---|
| Seized/Evidence | Aug 20, 2024 | UNKNOWN | Yes |

REASON FOR POLICE CUSTODY
Evidence

RECOVERING OFFICER / ID # / PERSON
Matt Bigoni #50904

STORAGE LOCATION / PERSON / DESTINATION / INTAKE PERSON
Axon Digital Server > Axon Digital Server

*24-017360-2 OTHER ITEM - PHOTOS*

ITEM CATEGORY
Axon Photo

DESCRIPTION
Photos

COLOR
None

| STATUS | STATUS DATE | TOTAL ($) VALUE | IN POLICE CUSTODY |
|---|---|---|---|
| Seized/Evidence | Aug 20, 2024 | UNKNOWN | Yes |

REASON FOR POLICE CUSTODY
Evidence

RECOVERING OFFICER / ID # / PERSON
Matt Bigoni #50904

STORAGE LOCATION / PERSON / DESTINATION / INTAKE PERSON
Axon Digital Server > Axon Digital Server

## ASSOCIATED RECORDS

| CASE # | REPORT TYPE | REPORT TITLE | REASON FOR ASSOCIATION |
|---|---|---|---|
| 24-017355 | Offense/Incident | FELON IN POSSESSION OF FIREARM (FELONY) \| 166.270-2 | Related Criminal Event/Series |

## ASSOCIATED RECORDS - EXTERNAL

| RECORD ID | SOURCE | REASON FOR ASSOCIATION |
|---|---|---|
| 24-210867 | Portland Police Bureau | Related Criminal Event/Series |

| REPORTING OFFICER SIGNATURE / DATE | SUPERVISOR SIGNATURE / DATE |
|---|---|
| Matt Bigoni #50904 Aug 20, 2024 23:51 (e-signature) | Erik McGlothin #44746 Aug 21, 2024 00:06 (e-signature) |
| PRINT NAME: Matt Bigoni #50904 | PRINT NAME: Erik McGlothin #44746 |

IN THE CIRCUIT COURT OF THE STATE OF OREGON

FOR THE COUNTY OF MULTNOMAH

852726

STATE OF OREGON, Plantiff,
vs.
KRIVOLENKOV, LEONID
Defendant. ☐ Youth

SWIS #:
DPSST #: 50904
Officer Name: BIGNI
Agency/Location: CLACKAMAS COUNTY S.O.
Report #: PPB 24-210867 CCSO 24-017360
Booking Number:
Date/Time of Arrest:

| BOOKING CHARGE(S) ☐ Additional Charges Attached | PROBABLE CAUSE *** Judicial Use Only *** | |
|---|---|---|
| I.P.O. | ☐ does exist | ☐ does not exist |
| RESIST ARREST | ☐ does exist | ☐ does not exist |
| | ☐ does exist | ☐ does not exist |
| | ☐ does exist | ☐ does not exist |

Additional charges for which probable cause exists:

***Judicial use only***

Judge of the Circuit Court

Date:

## AFFIDAVIT OF PROBABLE CAUSE

I, __________, do hereby swear under oath and affirmation that the following conduct occurred in Multnomah County, Oregon, and that each box I have checked and all information I have written or attached are true:

This incident occurred on the ______ day of ______,

☐ That I personally observed the following conduct, injury, and/or property loss:

WHILE INVESTIGATING A FELON IN POSSESSION OF A FIREARM, LEONID ENTERED A SPACE NEAR OFFICERS/DEPUTIES/AND THE LOADED FIREARM, AFTER BEING TOLD NOT TO ENTER THE SPACE. LEONID RESISTED MY EFFORTS WHILE HOLDING HIS ARM TO WALK HIM BACK ACROSS THE STREET; I TOLD HIM HE WAS UNDER ARREST. LEONID PULLED AWAY AND RESISTED MY EFFORTS TO HANDCUFF HIM.

PC AFFIDAVIT ALL 6.12.20

EXHIBIT 1
PAGE 9 of 12

☐ That I was told by: that they observed the following conduct, injury or property loss:

☐ Statements made by the defendant to myself or to Officer regarding this incident are as follows:

#60904 8/20/24

Date: Signature of Affiant (Sworn before a notary public or judicial officer)

SCRIBED AND SWORN TO BEFORE ME ON THE ABOVE DATE :

☒ Notary Public for Oregon. My commission expires: 02/13/27

☐ Deputy Clerk - Circuit Court

☐ Judge of Circuit Court

OFFICIAL STAMP
HEATHER ELIZABETH MARLIN
NOTARY PUBLIC - OREGON
COMMISSION NO. 1033221
MY COMMISSION EXPIRES FEBRUARY 13, 2027

PC AFFIDAVIT ALL 6.12.20

852726

**Clackamas County Sheriff's Office**
2223 KAEN RD | OREGON CITY, OR 97045 | P: 503.785.5000

## Case # 24-017360 - Arrest Report

| REPORT DATE / TIME | EVENT START DATE / TIME - EVENT END DATE / TIME | PRIMARY REPORTER |
|---|---|---|
| Aug 20, 2024 20:30 | Aug 20, 2024 19:35 | Matt Bigoni #50904 |

ASSISTING PERSONNEL / TYPE(S)
Garrett Grimm #53469 (Involved Officer)

## NARRATIVE

Lodged at Multnomah County Jail. PC statement filled out in jail. See offense incident for further details.

## ARREST #10-24-006112 (PROBABLE CAUSE)

| ARREST DATE / TIME | ARRESTING ORGANIZATION | ARREST TYPE |
|---|---|---|
| Aug 20, 2024 19:35 | Clackamas County Sheriff's Office - 10 | Probable Cause |

ARRESTING OFFICER
Matt Bigoni #50904

### DEFENDANT



| DEFENDANT NAME (LAST, FIRST MIDDLE) | SEX |
|---|---|
| D-1 Krivolenkov, Leonid P | Male |

| DOB / ESTIMATED AGE RANGE | RACE / ETHNICITY |
|---|---|
| 1978-[redacted] | White |

| PHONE NUMBER | EMAIL ADDRESS |
|---|---|
| | |

HOME ADDRESS
11411 NE 47TH CT, VANCOUVER, WA 98686

DEFENDANT WAS ARMED WITH
Unarmed

M | W 5'5" 130# BROWN | BROWN

### ARREST LOCATION

LOCATION NAME / STREET ADDRESS/LOCATION NAME / APT, UNIT, STE / DESCRIPTION
12505 NE HALSEY ST

| CITY | STATE | ZIP | COUNTRY CODE |
|---|---|---|---|
| PORTLAND | OR | 97230 | US |

| LOCATION CATEGORY | INCORP/UNINCORP / DISTRICT/CITY / CITY BEAT / NEIGHBORHOOD / SUBDIVISION G |
|---|---|
| Highway/ Road/ Alley/ Street/ Sidewalk | Out of Jurisdiction / Out of Jurisdiction / Out of Jurisdiction / OOJ |

### CHARGES

| CHARGES - 1 | COUNT |
|---|---|
| INTERFERING WITH PEACE OFFICER \| 162.247 | 1 |

| OFFENSE CASE # | OFFENSE CODE | OFFENSE START DATE |
|---|---|---|
| 24-017360 | INTERFERING WITH PEACE OFFICER \| 162.247 | Aug 20, 2024 19:35 |

OFFENSE LOCATION
12505 NE HALSEY ST, PORTLAND, OR 97230

| CHARGES - 2 | COUNT |
|---|---|
| RESISTING ARREST-DISORDERLY CONDUCT \| 162.315-4 | 1 |

| REPORTING OFFICER SIGNATURE / DATE | SUPERVISOR SIGNATURE / DATE |
|---|---|
| Matt Bigoni #50904 Aug 20, 2024 20:36 (e-signature) | |
| PRINT NAME | PRINT NAME |
| Matt Bigoni #50904 | |

| OFFENSE CASE # | OFFENSE CODE | OFFENSE START DATE |
|---|---|---|
| 24-017360 | RESISTING ARREST-DISORDERLY CONDUCT \| 162.315-4 | Aug 20, 2024 19:35 |

OFFENSE LOCATION
12505 NE HALSEY ST, PORTLAND, OR 97230

250018 20-AUG '24 PM 8:43

| REPORTING OFFICER SIGNATURE / DATE | SUPERVISOR SIGNATURE / DATE |
|---|---|
| Matt Bigoni #50904 Aug 20, 2024 20:36 (e-signature) | |
| PRINT NAME<br>Matt Bigoni #50904 | PRINT NAME |



**EXHIBIT 1**
**PAGE 12 of 12**

Subscribe

Summer Sale - Start Today for $1 - Expires 6/30/25

Advertisement




GHOST

FEEL GOOD ENERGY

AUTHENTIC FLAVORS / ZERO SUGARS* / NO BS

*GHOST® ENERGY IS LOW IN CALORIES

FIND A STORE

Offer valid thru 6/24 on multiples of 2 + tax.
Participating locations only. Single item at regular price.

PORTLAND

# VIDEO: Cop who yelled 'I'm going to shoot you in your head!' now under investigation

Updated: Apr. 01, 2017, 12:00 p.m. | Published: Apr. 01, 2017, 11:00 a.m.

Cop who yelled 'I'm going to shoot you in your head!' now under internal investigation

EXHIBIT 5
PAGE 1 of 6

The Portland Police Bureau has opened an internal investigation into the actions of an officer who threatened to shoot a man in the head -- when the man refused to come out of his motor home.

Officer Matt Bigoni also threatened to shoot the man's dog if the dog came out, made a reference to a funeral bell ringing for the man and warned that "bad things are going to happen" if police had to retrieve him from the motor home. Three police officers ended the approximately 25-minute encounter by bursting into the camper, holding the man down, repeatedly punching the man in the face and fracturing the man's eye socket and nose.

Advertisement

pemco.com | Sp

Police said 27-year-old Christopher Lee Fish was resisting their efforts to handcuff him and take him into custody on a warrant for violating the terms of his probation for a prior misdemeanor conviction.

Fish caught about 10 minutes of the officer's threats on cell phone video. The evidence turned out to be a key piece of evidence at trial in February.

"Thank God Mr. Fish turned on his phone," said April Yates, a certified law student who represented Fish, in her closing arguments to the jury.

Multnomah County Circuit Judge Christopher Marshall dismissed a charge of interfering with police, and jurors acquitted Fish of the only remaining charge against him: Resisting arrest.

On March 17, a civil attorney for Fish sent the city a notice of his intent to sue the city for alleged excessive force and lasting psychological damage.

Juror Cheryl Barham told The Oregonian/OregonLive that she's glad to hear that Fish has moved forward with plans to sue. She said the actions of the police officers was disheartening; their testimony during trial was "suspicious" and inconsistent; and it didn't take the six-person jury long to determine that Fish wasn't guilty of the crime charged against him.

"It was shocking to hear and see what they did," Barham said of the officers.

Juror Rachel Siegel said she knows Fish had a criminal record and police had a reason for showing up to take him into custody, but beating him was unnecessary and excessive. Siegel thought Bigoni was escalating the situation of a man holed up in his camper, not de-escalating it.

"The state had a very weak case, and I don't know why they even wasted taxpayer money prosecuting this," Siegel said.

Barham said she is not confident that the police bureau's internal investigation will reach a just conclusion.

"I don't have a lot of faith in those," Barham said. "...I don't want that method of policing to be condoned."

Bigoni responds: "That's great."

A few minutes later, Fish still hasn't come out of the trailer and says he wants time to put on his shoes and smoke a cigarette.

"Stop moving your hands around, or I'm going to shoot you!" Bigoni says.

Fish responds: "I'm not doing nothing to hurt you guys."

"Stop moving your (expletive) hands or I'm going to shoot you in your head!" Bigoni says to Fish, before addressing the other officers. "All right. That's it. Pepper. Pepper! Break that window."

A few minutes after that, Bigoni appears to be making a literary reference to a funeral bell, by stating: "Listen to the bell, Chris. It tolls for thee."

The police bureau opened its internal investigation on March 15, more than a month after the trial ended -- and on the same day The Oregonian/OregonLive asked the police bureau about the appropriateness of Officer Bigoni's words.

The news organization also asked about the veracity of the testimony of another officer -- Grigoriy Budey, who said he was holding onto Fish's arm in the darkened motor home but didn't see his colleagues punch Fish.

The next day, Police spokesman Sgt. Pete Simpson responded to the news organization's questions by saying he couldn't talk about specifics because of the internal investigation. When asked, Simpson said the bureau didn't initiate the investigation because of the news organization's questions, and he couldn't elaborate on what sparked the internal review.

"This is a case about officers who went too far -- officers who escalated a peaceful situation and made it violent," said Yates, the certified law student representing Fish. Yates attends law school at New York University and is interning for the Portland-area public defense firm Metropolitan Public Defender Services.

Deputy district attorney Victor Mercado told jurors that Fish took far too long to get dressed, lied to the police by saying they had found the wrong man and could have ended the entire incident before it got started if he just would have stepped out of the motor home in the beginning.



Christopher Fish arrest leads to internal investigation of Portland police officers

*****

### The video

Because the lights aren't on, there's little to be seen on the video that Fish recorded from inside his motor home. But there's much to be heard.

It's about 8 p.m. on Sept. 26, 2016. His motor home is parked near Southeast 122nd and Foster Road. Police had a warrant for Fish's arrest, for failing to meet with his probation officer for an oxycodone conviction and failing to complete domestic-violence counseling for a prior misdemeanor assault conviction.

Fish's recording captures Bigoni threatening to shoot Fish in three separate instances, and threatening to shoot Fish's dog in three separate instances.

The recording begins with Bigoni, the officer, saying "Get your ass out here, Chris. You've got a warrant. You're under arrest. You understand me?"

Bigoni warns: "Put your dog in or we're going to shoot the dog if it comes after me."

The dog is not barking, growling or making any audible noise during any point in the video.

Fish alerts the officers: "You guys are being recorded right now."

This tone in the video is not the tone of someone who is scared," Mercado said. "It is the tone of someone who is flippant, cavalier, defiant."

Mercado offered no defense of Bigoni.

"Let's be clear, Officer Bigoni was unpleasant," Mercado said. "I don't think he comes off well in the video."

*****

**Fish's testimony**

Fish testified that nearly from the start, Bigoni took a "super aggressive" approach. Fish said he didn't want to step out of the motor home and told the officers they had the wrong man because he feared for his life.

"He (Bigoni) instantly said he was going to pepper spray me. And started making threats. Said he was going to tase me or pepper spray me," Fish said. "I was nervous. I had anxiety and shock."

Asked Yates, the certified law student:

"When the officer threatened to shoot you, did you take his threat seriously?"

Answered Fish: "100 percent. ...I could hear it in his voice. You know when someone's sincere. ...If they mean it, you can feel it."

Fish said when police burst in, he dropped to his knees and put his hands behind his back. Police testified, to the contrary, that Fish flailed about and resisted their attempts to handcuff him -- forcing officers Bigoni and Royce Curtiss to have to punch him in the face seven to nine times.

"Hands down, it's the worst pain I've ever gone through," Fish said.

Once in a patrol car, officers wouldn't bring him to the hospital, Fish said, so he lied by saying he swallowed a baggie of heroin -- knowing they would have to bring him to a doctor. Medical staff scanned Fish and found no heroin baggie, but they did treat him for his broken facial bones.

Fish said physically, he still aches. But he hurts psychologically, too.

"I still take PTSD (post traumatic stress disorder) medicine," Fish said. "I still get nightmares. And I don't trust cops."

*****

**Police testimony**

Jurors who spoke to The Oregonian/OregonLive said the inconsistencies between the officers' testimony was obvious.

Curtiss, the first officer to testify, said he didn't recall Bigoni threatening to shoot Fish or his dog. Curtiss said he only remembers that Bigoni made some sort of threats.

Bigoni -- who was the second officer to testify and was caught on the video recording making the threats -- admitted he'd threatened to shoot Fish and his dog. But upon questioning by the defense, Bigoni said he didn't mention those threats in his police report or tell his supervising officer because he didn't think he had to.

"Purely verbal actions on my part do not constitute a use of force," Bigoni said.

Budey, the third officer to testify, didn't mention anything about Fish being punched by his colleagues during direct examination by the prosecutor. On cross-examination by the defense, Budey said he hadn't seen any punches thrown by the officers while he maintained his grip on Fish's arm -- Budey's head no more than a foot or two away from Fish's face.

Budey said it was too dark to see, but he was able to describe in detail other actions of the officers -- including that Fish was "body slamming" the other officers; that one of his fellow officers lost hold of Fish's left arm and that Budey helped by grabbing it; and that another officer was able to wrench back Fish's right arm so it could be handcuffed.

Photos police took of Fish shortly after they pulled him from his camper show his badly bruised and swollen face -- a stream of blood running from a gash on the bridge of his nose.

Simpson, the police spokesman, said that while the internal investigation is ongoing, the three officers -- Bigoni, Budey and Curtiss -- remain on patrol duty.

The Multnomah County District Attorney's Office also is investigating the case in light of questions from The Oregonian/OregonLive. Jenna Plank, the deputy district attorney who oversees the misdemeanor trial unit, said she couldn't answer specific questions because of the bureau's internal investigation.


**RECOMMENDED**

Trump administration cuts $11 million from programs that keep people healthy May. 31, 2025, 4:01 p.m.

Bills would address 200 contested water rights cases, overdrawn basins in Oregon, sponsors say Jun. 4, 2025, 6:00 a.m.



-- Aimee Green

agreen@oregonian.com

o_aimee



If you purchase a product or register for an account through a link on our site, we may receive compensation. By using this site, you consent to our User Agreement and agree that your clicks, interactions, and personal information may be collected, recorded, and/or stored by us and social media and other third-party partners in accordance with our Privacy Policy.

Sponsor Content

Discover the flavors of Rogue Valley: a wine lover's paradise

Discover Rogue Valley's unique wines and warm hospitality in Southern Oregon.

Travel Medford



Around the Web

**Mike Schmidt, District Attorney**
1200 SW First Avenue, Suite 5200
Portland, OR 97204-1193
Phone: 503-988-3162 Fax: 503-988-3643
www.mcda.us

# M E M O R A N D U M

**To:** Mike Schmidt
**From:** Nicole Hermann
**Date:** August 13, 2021
**Subject:** Officer Involved Protest Case Review

Protests in the City of Portland that occurred in 2020 and 2021 resulted in a number of use of force complaints involving law enforcement. Some of the complaints alleged excessive force that could constitute criminal acts under Oregon law absent legal provisions allowing the particular use of force under the circumstances presented. Other complaints alleged the unlawful taking of personal property by police officers. The Multnomah County District Attorney's Office became aware of some of those incidents through complaints received directly, civil lawsuits filed against the City of Portland, social media posts, circulating videos, and referrals from plaintiff's attorneys. The Multnomah County District Attorney's Office sought to review and investigate those incidents to determine whether any police officer engaged in an unlawful use of force. The purpose of this memorandum is to document the review of those incidents, first discussing the applicable law and then addressing each of the incidents reviewed. The MCDA's review of these cases narrowly and objectively reflects an analysis of Oregon criminal law in line with MCDA's statutory authority. Notwithstanding, the MCDA also acknowledges the disturbing nature of a number of the complaints reviewed, particularly those featuring video of violent encounters, and the impact these images have on our community.

## LAW

The following briefly summarizes the Oregon statutes governing the use of force by peace officers in connection with making an arrest or in self-defense and in defense of third parties. Generally, state law provides protections from criminal liability to peace officers when using force to effectuate an arrest or in self-defense, actions that are part of their sworn and authorized duty to the public. The law grounds those protections in the concept of reasonableness with respect to the use of force and the extent of force used. Statutory protections relating to the use of force in connection with making an arrest and in self-defense and defense of others are characterized as justification defenses under Oregon law. As such, when a defense relating to the use of force in either a justification defense or arrest event is raised, the burden is on the state to disprove the justification beyond a reasonable doubt. *State v. Waller*, 22 Or App 299 (1975).

In September of 2020, in the wake of the national George Floyd protests, the Oregon Legislature enacted House Bill 4301 which updated the statutory scheme concerning the justification defenses relating to the use of force generally and the use of force in connection with making an arrest. House Bill 4301 became effective in January of 2021 and, among other

relatively minor statutory changes, repealed ORS 161.235 and 161.239 regarding the use of force in making an arrest and replaced those statutes with new, modified standards. In large part, while the language concerning the use of force in connection with making an arrest has been modified, the substantive standards under which analysis for criminal liability must occur remain the same.

## I. General Statutory Framework Regarding a Peace Officer's Use of Force

ORS 133.235 authorizes a peace officer generally to make an arrest for a crime and provides that "a peace officer may use physical force as justifiable under ORS 161.245 and sections 7 and 8 of this 2020 second special session Act". ORS 133.235(4)[1]. The statute expressly authorizes the use of force in connection with an arrest, but limits that use of force as outlined in the statutes governing justification defenses. Justification defenses are governed by ORS 161.190–161.275.

ORS 161.209–161.219 govern the justification of the use of force in self-defense and in defense of others outside of the specific context of a peace officer's making an arrest. Because the justification statutes apply generally, the self-defense and defense of others justifications are applicable to both citizens and peace officers equally.

ORS 161.195 further defines justification where not otherwise defined in statute, stating that "conduct which would otherwise constitute an offense is justifiable and not criminal when it is [...] performed by a public servant in the reasonable exercise of official powers, duties or functions."

## II. Protections Relating to the Use of Force in Connection with Making an Arrest

ORS 133.235(4) specifically limits a peace officer's justification for using force when making an arrest as outlined in sections 7 and 8 of HB 4301 and ORS 161.245. The pre-September 2020 version of the statute made specific reference to ORS 161.235 and 161.239 which were repealed by HB 4301. The statutory language is reproduced below. While the language may have changed, the substantive analysis remains consistent, though there are additional requirements applicable under the HB 4301 modifications.

ORS 161.239 and Section 8 of HB 4301 deal specifically with the use of *deadly* force in connection with making an arrest and have not been included below.

ORS 161.235 reads, in its entirety, as follows:

> Except as provided in ORS 161.239, a peace officer is justified in using physical force upon another person only when and to the extent that the peace officer reasonably believes it necessary:

---

[1] Pre-September 2020 versions of the relevant statutes referred to "ORS 161.235, 161.239 and 161.245". ORS 161.235–239 were repealed and parts of the language of ORS 161.245 was changed by HB 4301.

(1) To make an arrest or to prevent the escape from custody of an arrested person unless the peace officer knows that the arrest is unlawful; or
(2) For self-defense or to defend a third person from what the peace officer reasonably believes to be the use or imminent use of physical force while making or attempting to make an arrest or while preventing or attempting to prevent an escape.

Section 7 of HB 4301 reads, in its entirety, as follows:

(1) A peace officer may use physical force upon another person only when it is objectively reasonable, under the totality of circumstances known to the peace officer, to believe:
(a) That the person poses an imminent threat of physical injury to the peace officer or to a third person; or
(b) That the use of physical force is necessary to:
(A) Make a lawful arrest when the peace officer has probable cause to believe the person has committed a crime; or
(B) Prevent the escape from custody of the person when the peace officer has probable cause to believe the person has committed a crime.
(2) A peace officer may use physical force upon another person under this section only to the degree that the peace officer reasonably believes necessary to prevent physical injury under subsection (1)(a) of this section or to carry out a purpose described in subsection (1)(b) of this section.
(3) Prior to using physical force upon another person, if the peace officer has a reasonable opportunity to do so, the peace officer shall:
(a) Consider alternatives such as verbal de-escalation, waiting or using other available resources and techniques if reasonable, safe and feasible; and
(b) Give a verbal warning to the person that physical force may be used and provide the person with a reasonable opportunity to comply.

With respect to the use of force in connection with making an arrest, the standards articulated between HB 4301 and ORS 161.235 are largely the same. Both require that an officer subjectively believe that force is necessary to make an arrest. Both require that the degree of force used is objectively necessary. And both require that the arrest being made is lawful (i.e., pursuant to at least probable cause).

The primary difference between ORS 161.235 and HB 4301 is that the latter includes additional language requiring an officer to take preliminary steps—where there is "reasonable opportunity to do so"—before the protections from liability apply. Specifically, before using force to make an arrest, section 7 of HB 4301 requires that an officer 1) consider alternatives such as de-escalation and 2) provide verbal warnings that physical force may be used.

"Reasonable belief" in the context of the statutes governing the use of force in connection with making an arrest is described in ORS 161.245. Specifically, ORS 161.245(1) provides that "a reasonable belief that a person has committed an offense means a reasonable belief in facts or

circumstances which, if true, would constitute an offense." ORS 161.245(2) provides that the justification laid out in HB 4301 section 7 and ORS 161.235 does not apply if "the arrest is unlawful and is known by the [peace] officer to be unlawful."

## III. Protections Relating to the Use of Force in Self-Defense and Defense of Others

ORS 161.209 provides that a person is justified in using physical force in self-defense or in defense of another person "from what the person reasonably believes to be the use or imminent use of unlawful physical force" and limits the amount of force that a defender may use to "the degree of force which the person reasonably believes to be necessary for the purpose."

That is, under the statute, a person's use of force is justified as self-defense if 1) the person holds an objectively reasonable subjective belief that the unlawful force is being used against them and 2) the degree of force used to defend is no greater than what a reasonable person would deem necessary under the circumstances.

## INCIDENT REVIEW

MCDA initiated a review of 21 cases. Review of these cases started after MCDA was either contacted directly by a plaintiff's attorney, became aware of a civil complaint that had been filed against the City of Portland alleging assaultive conduct by a Portland Police officer, or received information regarding social media or circulating video accounts of use of force incidents during protests. Four of the 21 cases were identified as incidents involving "Officer 67." MCDA referred these four cases to the Oregon Department of Justice (ODOJ) for review and investigation. Four of the remaining 17 cases are still pending further investigation and prosecutorial review. Of the remaining 13 cases reviewed, eight cases were closed without further investigation and five cases were referred for investigation and reviewed by MCDA.

Of the eight cases closed without further investigation, five cases were closed after efforts were made to contact the plaintiff's attorney and no responses were received. An additional three cases were closed after the plaintiff's attorney or person injured declined to participate in the criminal investigation. These eight cases include the following incidents: complainant

| Incident # | Approximate Incident Date | Allegation | Complainant | Civil Court Jurisdiction | Civil Court Case # | Plaintiff's Attorney(s) | MCDA Case Status | Case Outcome |
|---|---|---|---|---|---|---|---|---|
| 01 | May 31, 2020 | The allegations include injuries caused by impact munitions used by an unnamed officer. | Mason Lake | Multnomah County Circuit Court | 20CV19838 | Michael Fuller | Closed | Attorney indicated to MCDA a willingness to participate in a criminal investigation but was non-responsive when PPB reached out to conduct |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | investigative follow-up. |
| 02 | June 2, 2020 | The allegations include injuries caused by a baton strike and push by an unnamed officer. | Philip Elias | Multnomah County Circuit Court | 20CV19783 | Michael Fuller | Closed | Attorney indicated the plaintiff's desire to decline participation in a criminal investigation. |
| 03 | June 5, 2020 | The allegations include injuries caused by a flash bang grenade thrown by an unnamed officer. | Julia Leggett | Multnomah County Circuit Court | 20CV19842 | Michael Fuller | Closed | Attorney indicated to MCDA a willingness to participate in a criminal investigation but was non-responsive when PPB reached out to conduct investigative follow-up. |
| 04 | June 5 – June 6, 2020 | The allegations include injuries caused by a rubber bullet shot by an unnamed officer. | Dominique Bouchard | Multnomah County Circuit Court | 20CV21115 | Gregory Kafoury | Closed | MCDA received no response from plaintiff's attorney. |
| 05 | June 6, 2020 | The allegations include injuries caused by projectiles launched by an unnamed officer. | Daniel Michaels | Michael Fuller | 20CV19840 | Michael Fuller | Closed | Attorney indicated the plaintiff's desire to decline participation in a criminal investigation. |
| 06 | June 7, 2020 | The allegations include injuries caused by a baton strike and push by an unnamed officer. | Lydia Fuller | Multnomah County Circuit Court | 20CV20062 | Michael Fuller | Closed | Attorney indicated the plaintiff's desire to decline participation in a criminal investigation. |
| 07 | June 13, 2020 | The allegations include injuries caused by a rubber bullet shot by an unnamed officer. | Alexandra Montgomery | Multnomah County Circuit Court | 20CV21297 | Michael Fuller | Closed | Attorney indicated to MCDA a willingness to participate in a criminal investigation but was non-responsive when |



**EXHIBIT 6**
**PAGE 5 of 8**

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | PPB reached out to conduct investigative follow-up. |
| 08 | July 18, 2020 | The allegations include injuries caused by being knocked to the ground by unnamed officers. | Michael Weisdorf | Multnomah County Circuit Court | 20CV28964 | Gregory Kafoury | | MCDA received no response from plaintiff's attorneys. |

The remaining five cases identified by MCDA were referred to the Portland Police Bureau's Detective Division for criminal investigation (and in one case, ODOJ[2]) for further investigation and then later reviewed by MCDA for prosecution consideration upon completion of the law enforcement investigation. A discussion, analysis, and reviewing conclusion of each incident, applying the scope of Oregon criminal law described on pages 1-3 of this memorandum, is detailed below. Of the five incidents reviewed, four of the cases resulted in a determination that the incident did not involve criminal use of force or other criminal action by the involved PPB officer.

**Teri Jacobs**

This incident involves allegations surrounding the actions of PPB Officer Corey Budworth that caused physical injury to Teri Jacobs the night of August 18, 2020. The allegations were assigned to PPB for investigation and a completed case was presented to MCDA for review. The case was presented to a Multnomah County grand jury in June 2021 and the grand jury returned an indictment for Assault IV. This case remains pending.

**Erica Christiansen**

As a result of my prosecutorial review, I concluded that PPB Officer Brent Taylor acted in defense of others at the time he deployed less lethal munitions, specifically the FN303[3], against Erica Christiansen on the night of August 9, 2020 near 2045 North Kilpatrick Street in Portland, Oregon. As a result, Officer Taylor's actions were not criminal in nature.

The reader is referred to the police reports for a full account of Portland Police Detective Brent Christensen[4] and ODOJ Special Agent Matt Hingston's investigation and to applicable law. Partial video of the incident, taken by the Portland Police Bureau's Forensic Evidence Division (FED), was reviewed during the investigation. Interviews with Erica Christiansen and officers present during the incident confirmed the identities of the parties visible in the footage. Collateral officer and witness reports and the partial video footage detail that the demonstrations on the night of August 9, 2020 had been deemed unlawful. Having declared an unlawful

---

[2] August 09, 2020 incident involving Erica Christiansen.
[3] A less-lethal impact launcher powered by compressed air capable of delivering a variety of different types of ammunition to including marking rounds and a Pava round.
[4] Officer Brent Christensen is no relation to Erica Christiansen.

assembly and based additionally on the violent nature of the large crowd including use of weapons, items being throw, and fires started by the crowd, PPB declared a riot. PPB officers were staged near 2045 North Kilpatrick Street and were in the process of leaving the area when Erica Christiansen began interacting with officers. Erica Christiansen first approached PPB Officer Lino Pavon from behind and threw a lit cigarette at him, striking him underneath his helmet. Officer Brent Taylor observed Erica Christiansen approach Officer Pavon and watched her throw the cigarette. In response to Erica Christiansen's actions, Officer Taylor used his hand to push Erica Christiansen back, moving her away from Officer Pavon. Erica Christiansen continued to advance toward Officer Pavon who was unaware of her approach. Erica Christiansen continued to move toward Officer Pavon despite commands from Officer Taylor and other officers, to back up and leave the area. In response to the second advancement by Erica Christiansen, Officer Taylor deployed his FN303 three times, striking Erica Christiansen as she continued to advance. FED video shows Officer Taylor, who is partially visible, raising his FN303 and shooting three times (off-screen) in quick succession. The available view of the FN303 shows that it is level and shouldered while being fired and not angled down towards the ground.

As outlined above, ORS 161.209 provides that a person's use of force is justified as self-defense if 1) the person believes that unlawful force is being used against themselves or another person and 2) the degree of force used to defend is no greater than what a reasonable person would deem necessary under the circumstances. Officer Taylor's first use of force to stop Erica Christiansen's advance on Officer Pavon was a push that moved her backwards but did not fully halt her movement. When that first use of force does not deter Erica Christiansen's advancement, nor do the repeated warnings of other officers to stop and leave, Officer Taylor uses additional, non-lethal force by deploying the FN303. The use of the FN303 stops Erica Christiansen's movement and officers are able to disengage and move safely away. Officer Taylor's use of the FN303 pursuant to ORS 161.209, use of force used in defense of Officer Pavon, was in response to a reasonable assessment that Erica Christiansen would continue to use force against Officer Pavon and was a reasonable and necessary degree of force. Although Erica Christiansen was injured and is seeking remedy through a civil lawsuit, for the above reasons, criminal charges are not warranted in this incident.

**<u>Tyler Cox</u>**

This incident involved the use of force by PPB Officer Thomas Clark against Tyler Cox on August 31, 2020. The reader is referred to the specific memorandum addressing this incident for a full account of my prosecutorial review.

**<u>Thomas Dreier</u>**

This incident involved an allegation that PPB Officer Stephen Perry committed theft by taking the guitar of Thomas Dreier during a protest on August 15, 2020 near the Penumbra Kelly Building at East Burnside and Northeast 47th Avenue. The guitar was later located in a PPB property room by PPB Detective Daniel Andrew on December 3, 2020 and returned to Thomas Dreier. After review of the associated video, police reports, and interview of Officer Perry, I agree with the conclusion of investigating PPB Detective Daniel Andrew that there is no evidence to support a charge of theft (in any degree). Detective Andrew determined from associated reports

and an interview with PPB Officer Perry that Thomas Dreier's guitar was seized after Thomas Dreier approached Officer Perry from behind while Officer Perry was addressing another individual. Thomas Dreier was present during an unlawful assembly while officers were actively working to clear the streets and defend themselves against the continuous use of unconventional weapons. The guitar was held with other seized items until located by Detective Andrew and returned to Thomas Dreier. There is no evidence that Officer Perry intended to permanently deprive Thomas Dreier of his guitar and criminal charges are not warranted in this incident.

**Evan Henshaw-Plath**

This incident involved an allegation that PPB officer(s) committed theft by taking the speaker system of Evan Henshaw-Plath during a protest event on August 20, 2020. PPB Detective Daniel Andrew located the speaker system in a PPB property room and associated reports documenting its seizure pursuant to a noise violation. Any crime of theft requires proof that a person intended to deprive another of their property as defined by ORS 164.005 and 164.015. There is no evidence to prove an intent to deprive or any action other than a seizure of evidence pursuant to a violation. As a result, no criminal charge for theft can be proven against the associated officers.

IN THE CIRCUIT COURT OF THE STATE OF OREGON

FOR MULTNOMAH COUNTY

STATE OF OREGON,
Plaintiff,

vs.

LEONID KRIVOLENKOV
DOB: [redacted]/1978
SID: 23638353
FBI: FLJ7NPCPP

Defendant.

Court Nbr 24CR43131

DA Nbr 051-1084437

Crime Report
Clackamas County Sheriff's Office: 10 24-17360

**INFORMATION OF THE DISTRICT ATTORNEY**

The above-named defendant is accused by this information of the crimes committed as follows:

**COUNT 1**

**INTERFERING WITH A PEACE OFFICER OR PAROLE AND PROBATION OFFICER, ORS 162.247, a Class A Misdemeanor**

The defendant, **LEONID KRIVOLENKOV**, on or about August 20, 2024, in Multnomah County, Oregon, did unlawfully and intentionally and knowingly act in a manner that prevented Matthew Bigoni, a person known to the defendant to be a peace officer, from performing the officer's lawful duties with regard to a criminal investigation, contrary to statutes in such cases made and provided, and against the peace and dignity of the State of Oregon.

Dated at Portland, Oregon, in the county aforesaid, on August 21, 2024.

MIKE SCHMIDT
District Attorney
Multnomah County, Oregon

By ______________________
Edward G Miller, OSB# 232113
Deputy District Attorney

Uniform Complaint



Multnomah County District Attorney
1200 SW 1st Avenue, Suite 5200, Portland, OR 97204-1193
P: (503) 988-3162 F: (503) 988-3643

**EXHIBIT 7**
**PAGE 1 of 1**

**IN THE CIRCUIT COURT OF THE STATE OF OREGON**

**FOR MULTNOMAH COUNTY**

| | |
|---|---|
| STATE OF OREGON,<br><br>Plaintiff,<br><br>v.<br><br>LEONID KRIVOLENKOV,<br>DOB: [redacted]/1978<br>SID: 23638353<br>FBI: FLJ7NPCPP<br><br>Defendant. | Court Nbr: 24CR43131<br>DA Case: 051-1084437<br>Crime Report:<br>Clackamas County Sheriff's Office: 10 24-17360<br><br>**JUDGMENT OF DISMISSAL** |

FILED MULTNOMAH CO CIRCUIT
'24 NOV 27 AM10:31

On the application of ALEXANDRA JANSKY, Deputy District Attorney, this matter came before the court for a judgment dismissing the within information as to the defendant, and

It appearing to the court that the state is unable to proceed, and that the ends of justice will be best served by the dismissal of the within matter, and being fully advised in the premises,

IT IS ADJUDGED that the information herein against the above-named defendant, charging defendant with the charge(s) of Interfering with a Peace Officer or Parole and Probation Officer, be and the same is hereby dismissed.

Multnomah County Circuit Court Judge — 11/26/24
Date

Cheryl A. Albrecht

SUBMITTED BY:
ALEXANDRA JANSKY OSB# 233484
Multnomah County District Attorney Office
1200 SW 1st Avenue, Suite 5200
Portland, OR 97204

24CR43131
JGDW
Judgment – General Dismissal
18633426

**EXHIBIT 8**
**PAGE 1 of 1**