UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

LEONID P. KRIVOLENKOV,

Plaintiff,

v.

MATT BIGONI, GARRETT GRIMM,
SARAH KERWIN, JASON HUBERT,
CLACKAMAS COUNTY, and
THE CITY OF PORTLAND, OREGON,

Defendants.

3:25-cv-01073-JR

OPINION AND ORDER

Russo, Magistrate Judge:

Plaintiff Leonid Krivolenkov filed this action against defendants the City of Portland ("City"), and Portland Police Officers Sgt. Sarah Kerwin, and Jason Hubert, (collectively "City defendants"); Clackamas County ("County"), and Clackamas County Sheriff's Officers Matthew Bigoni and Garrett Grimm (collectively "County defendants"), alleging 42 U.S.C. § 1983 and state law claims arising out of plaintiff's August 20, 2024, arrest. All parties have consented to allow a Magistrate Judge enter final orders and judgment in this case in accordance with Fed. R. Civ. P.

73 and 28 U.S.C. § 636(c). Defendants now each move for summary judgment pursuant to Fed. R. Civ. P. 56. For the reasons stated below, defendants' motions are granted and this case is dismissed.

## BACKGROUND[1]

Plaintiff, in his own words, "has devoted several years of his life documenting police and other public officials in the course of their duties [in an effort] to bring awareness of official misconduct and violations of his, and the rights of citizens in general." Compl. ¶ 15 (doc. 1). Plaintiff maintains a YouTube account dedicated to "expos[ing] governmental corruption, abuse of authority, power, violations of law by police officers," and other similar public interest causes. Declaration of Daniel Simon ("Simon Decl.") ¶ 2, Ex. A, 1/27/26 Krivolenkov Deposition ("First Krivolenkov Depo.") 32:11-32:25 (doc. 61-1). In pursuit of those interests, plaintiff has filed a number of lawsuits under 42 U.S.C. § 1983 in this District.

On August 20, 2024, near the intersection of Northeast Halsey Street and 126th Avenue in Portland, Oregon, plaintiff observed a "large presence of police and civilian activity." Compl. ¶ 17. Defendants and other officers were investigating a vehicle that had been pulled over, and from which a loaded firearm had been recovered. Declaration of Matthew Bigoni ("Bigoni Decl.") ¶ 8 (doc. 57). Plaintiff began filming the investigation from across the street and continued to film from that location for approximately 4.5 minutes. Simon Decl. ¶ 4, Ex. C, Plaintiff's Video Footage ("Krivolenkov Video") 00:17-04:49. Plaintiff's presence went largely unacknowledged, save for one officer informing plaintiff that he was also being recorded by audio and video. Krivolenkov

[1] The Court generally cites evidence using the assigned docket numbers. This Court is not bound by either party's characterization of the evidence and instead independently reviews the record to determine whether summary judgment is appropriate. *Scott v. Harris*, 550 U.S. 372, 380 (2007). This is especially true where, as here, those events are captured on videos that are not alleged to have been doctored or altered. *Id.* at 381. As such, only the facts borne out by the record are recounted herein.

Video 0:01:39-0:01:43. Although officers were aware he was there filming, no officer objected to plaintiff filming from the other side of the road. Simon Decl. ¶ 3, Ex. B, 6/30/26 Krivolenkov Deposition ("Second Krivolenkov Depo.") 108:4-10 (doc. 61-2).

At approximately 04:49 on the video, plaintiff began to move across the street. Defendant Hubert noticed plaintiff as he approached, told him, "hey you gotta stay back there," and gestured with his hand for plaintiff to move back. Krivolenkov Video 04:53-04:54. Plaintiff ignored defendant Hubert and continued to move between the groups of officers at the scene. He walked between two marked police cars and moved behind two groups of officers, purportedly "[t]o get a better view of the scene." Krivolenkov Video 04:49; Compl. ¶¶ 24-25. Multiple officers warned plaintiff to move back to where he had been previously filming and warned plaintiff that he could be arrested for interfering. Krivolenkov Video 04:50-04:57. Plaintiff did not return to his previous location and continued to move behind the officers. Defendant Bigoni again instructed plaintiff to move back across the street. Krivolenkov Video 04:58-05:04.

Bigoni then took hold of plaintiff's left wrist and moved him back across the street to where he had previously been standing. Bigoni Decl. ¶ 13; Simon Decl. ¶ 5, Ex. D, Deputy Bigoni Body Worn Camera Footage ("Bigoni BWC") 00:09-00:20 (doc. 61-4). During the walk across the street, plaintiff verbally protested, yelling that he was being assaulted by Bigoni. Once on the other side of the street, Bigoni instructed plaintiff to "stand here, don't go back over there or you'll be under arrest." Krivolenkov Video 0:05:14-0:05:16. Plaintiff responded by yelling "you do not assault me" after which Bigoni told plaintiff he was under arrest and moved to arrest him. Bigoni BWC 00:20-00:22. Plaintiff believed the arrest was unlawful and that he had a right to defend himself from the attempted arrest. Compl. ¶ 40; First Krivolenkov Depo. 101:05-24. Based on his belief that the arrest was unlawful, plaintiff pulled out of Bigoni's grip and attempted to run away.

Bigoni BWC 00:22-27. Defendant Bigoni grabbed plaintiff by his shoulder and tackled him to the ground, and defendants Grimm and Kerwin moved in and assisted with the arrest. Compl. ¶¶ 42-43; Simon Decl. ¶ 6, Ex. E, Deputy Grimm Body Worn Camera Footage ("Grimm BWC") 00:25-54.

Plaintiff received scrapes and bruises from being tackled to the ground. Compl. ¶ 44; Bigoni BWC 03:35-03:45. He was subsequently "taken to Bigoni's patrol vehicle where he was body searched [and] placed in the patrol vehicle." *Id.* ¶ 46. Plaintiff was transported to the Multnomah County Jail, and was charged with one count of Interfering with a Peace Officer or Parole and Probation Officer, ORS 162.247, a Class A Misdemeanor. Declaration of Jake Miller ("Miller Decl."), Ex. 1 (doc. 56-1). On November 26, 2024, the Multnomah Circuit County Court dismissed the charge against plaintiff. Compl. ¶¶ 58-59.

On June 23, 2025, plaintiff initiated this action asserting 42 U.S.C. § 1983 claims for: (1) violation of his First Amendment free-speech rights, (2) First Amendment retaliation, (3) Fourth Amendment unreasonable search and seizure, (4) Fourth Amendment excessive force, and (5) malicious criminal proceedings. Plaintiff also brings state-law claims for false arrest, false imprisonment, assault, and battery. As relief, plaintiff seeks $5,000,000 in compensatory damages, "general and special damages in amounts to be determined at trial to the fullest extent permitted under the Oregon Tort Claims Act," "punitive damages in an amount to be determined at trial," and attorney fees and costs. Compl. 20-21.

On July 29, 2026, the County defendants moved for summary judgment and on August 3, 2026, the City defendants moved for summary judgment. County Defs.' Mot. (doc. 54); City Defs.' Mot. (doc. 60).

## STANDARD OF REVIEW

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, affidavits, and admissions on file, if any, show "that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Substantive law on an issue determines the materiality of a fact. *T.W. Elec. Servs., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). Whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party determines the authenticity of the dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id.* at 324.

Special rules of construction apply when evaluating a summary judgment motion: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *T.W. Elec.*, 809 F.2d at 630.

## DISCUSSION

Both City and County defendants argue that there are no material facts in dispute and that summary judgment is warranted because (1) the officers are entitled to qualified immunity on plaintiff's § 1983 claims; (2) no evidence supports plaintiff's claim that his constitutional rights were violated; (3) there was probable cause to arrest plaintiff for the crime of interfering with a peace officer; and (4) defendants are entitled to apparent authority immunity for plaintiff's state-law claims.

For his part, plaintiff argues that genuine issues of material fact preclude summary judgment. Specifically, plaintiff argues that his arrest was unlawful because the officers lacked probable cause. Plaintiff also argues that the officers are not entitled to qualified immunity because the right to record police and the right to be free from unlawful arrest are clearly established.

**I. Defendants are Entitled to Summary Judgment on Plaintiff's § 1983 Claims**

To prevail on a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate that: (1) the conduct complained of deprived him or her of an existing federal constitutional or statutory right; and (2) the conduct was committed by a state actor or a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted). Here, it is undisputed that defendants qualify as state actors for the purposes of 42 U.S.C. § 1983. But as discussed below, plaintiff has failed to provide evidence that defendants deprived him of a constitutional right within the meaning of Section 1983.

Additionally, qualified immunity shields government officials from § 1983 civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citations omitted). To determine whether a government actor is entitled to qualified immunity, the court evaluates, in no particular order, whether: (1) the alleged misconduct violated a right; and (2) that right was clearly established at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). And it is the plaintiff's burden to show "'that the rights allegedly violated were clearly established.'" *Gordon v. Cnty. Of Orange*, 6 F.4th 961, 969 (9th Cir. 2021) (quoting *Shafer v. Cnty. of Santa Barbara*, 868 F.3d 1110, 1118 (9th Cir. 2017). Here, plaintiff has failed to meet that burden, and defendants are entitled to qualified immunity.

### A. First Amendment Claims

Plaintiff brings a claim for violations of his First Amendment rights against all individual defendants and a separate claim for First Amendment Retaliation against defendant Bigoni.

To sustain a claim for a First Amendment violation, plaintiff must show that "(1) he was engaged in a constitutionally protected activity, (2) the defendant's actions would chill a person of ordinary firmness from continuing to engage in the protected activity, and (3) the protected activity was a substantial or motivating factor in the defendant's conduct." *Pinard v. Clatskanie Sch. Dist. 6J*, 467 F.3d 755, 770 (9th Cir. 2006).

Plaintiff argues that his rights were violated when he was arrested and charged with interfering with a peace officer for "simply using his phone to record deputies/officers/and/or CCSO/PPB employees during their public duties in a public place without interfering with the performance of those duties." Compl. ¶ 70. However plaintiff provides no evidence that defendants' actions were motivated by plaintiff filming the investigation. *Mendocino Env't Ctr. v. Mendocino Cnty.*, 192 F.3d 1283, 1300 (9th Cir. 1999) (stating that a First Amendment claim requires evidence that chilling a plaintiff's protected activities was "a substantial or motivating factor in the defendant's conduct.") (citation modified). In fact, plaintiff filmed defendants from across the street for nearly five minutes and no officer objected to his filming. Only when plaintiff moved into the space of the ongoing investigation did officers object to his presence. It is clear from the record that defendants' objections were not based on plaintiff's act of filming the investigation; instead defendants' objections were based on plaintiff inserting himself into the middle of that investigation rather than filming from another location. *See Solomon v. Las Vegas Metro. Police Dep't*, No. 23-4166, 2025 WL 1678174, at *1 (9th Cir. June 12, 2025) (no First

Amendment violation where plaintiff was arrested after ignoring officers' instructions to film from another location).

Plaintiff's claim for First Amendment retaliation fails for the same reason. Nothing in the record suggests that defendant Bigoni's actions had the requisite causal connection to plaintiff's protected activities. *Ballentine v. Tucker*, 28 F.4th 54, 61 (9th Cir. 2022). Plaintiff has offered nothing beyond conclusory statements as evidence that his filming the investigation was the motivating factor behind his arrest. In fact, defendant Bigoni warned plaintiff several times that he needed to move back from the investigation, or he could be subject to arrest for interfering. Moreover, as discussed below, plaintiff failed to show that officers lacked probable cause to arrest him. Without such a showing, plaintiff's claim for retaliatory arrest fails. *Nieves v. Bartlett*, 587 U.S. 391, 404 (2019) (absent a showing that no probable cause existed, a retaliatory arrest claim fails).

### B. Fourth Amendment Claims

Plaintiff brings claims under the Fourth Amendment including unreasonable search and seizure, excessive force, and malicious prosecution. For the reasons discussed below, defendants are entitled to summary judgment on each of plaintiff's Fourth Amendment claims.

#### 1. Unreasonable Search and Seizure

The Fourth Amendment protects people from unreasonable searches and seizures. *See* U.S. Const. Amend. IV; *Cameron v. Craig*, 713 F.3d 1012, 1021 (9th Cir.2013) (citation omitted). The Fourth Amendment, however, "does not proscribe all state-initiated . . .seizures; it merely proscribes those which are unreasonable." *United States v. Willis*, 431 F.3d 709, 714 (9th Cir. 2005) (citation and internal quotation marks omitted). Under the Fourth Amendment, a police officer may arrest a person without a warrant if the officer has probable cause to believe the person

has committed a crime. *Id*. "Probable cause" exists if the available facts suggest a "fair probability" that the suspect has committed a crime. *Tatum v. City and Cnty. of San Francisco*, 441 F.3d 1090, 1094 (9th Cir.2006) (citation omitted).

To determine whether an officer had probable cause at the time of a plaintiff's arrest, the court must determine "whether at that moment the facts and circumstances within [his] knowledge and of which [he] had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [plaintiff] had committed or was committing an offense." *Beck v. State of Ohio*, 379 U.S. 89, 91 (1964) (citations omitted).

In Oregon, "an officer has probable cause to arrest if 'there is a substantial objective basis for believing that more likely than not an offense has been committed and a person to be arrested has committed it.'" *Carr v. City of Hillsboro*, 497 F. Supp. 2d 1197, 1211 (D. Or. 2007) (quoting *State v. Makuch*, 340 Or. 658, 667, 136 P.3d 35, 40 (2006)). Thus, "where the material, historical facts are not in dispute, and the only disputes involve what inferences properly may be drawn from those historical facts, it is appropriate for this court to decide whether probable cause existed...." *Id.* at 1211–12 (quoting *Peng v. Mei Chin Penghu*, 335 F.3d 970, 979-80 (9th Cir. 2003)) (citation modified).

Plaintiff was arrested for the crime of Interfering with a Peace Officer under ORS 162.247. Bigoni Decl. ¶ 5, Ex. 4; Miller Decl. ¶ 4. A person commits the crime of interfering with a peace officer if the person, knowing that another person is a peace officer, intentionally or knowingly acts in a manner that prevents the officer from performing his lawful duties with regard to a criminal investigation. ORS 162.247. Plaintiff knew that it was police officers[2] who were

[2] Plaintiff argues only that he did not know defendant Hubert was an officer because he was in plain clothes. This assertion is questionable, as plaintiff's own cell phone video shows Hubert's badge on display at his waist. Krivolenkov Video 05:02-05:06. And plaintiff is equivocal on

conducting the investigation – the fact that police were present was his motivation to film the incident. First Krivolenkov Depo. 95:25-96:10. Plaintiff also knew when he approached the scene that an active police investigation was "developing" – he stopped to film for that exact reason. *Id*. When plaintiff physically moved into the ongoing investigation and remained there, despite being warned[3] by multiple officers that he needed to move back, the officers reasonably believed there was probable cause to arrest plaintiff for Interfering with a Peace Officer. *See* Hubert Decl. ¶ 13; Kerwin Decl. ¶¶ 7, 13; Bigoni Decl. ¶ 16; Krivolenkov Video 05:00-05:05.

Plaintiff's post-hoc attempt to characterize his conduct as "at most" rising to the level of passive resistance is unavailing. Pl.'s Resp. to City Defs.' Mot. ¶ 34. "'Passive resistance' refers to noncooperation with a peace officer that does not involve violence or other active conduct by the defendant." *State v. McNally*, 361 Or 314, 392 P3d 721 (2017). Video of the incident shows that plaintiff's resistance was not passive; he physically pulled out of Bigoni's grip and then attempted to run away after being told he would be arrested. Bigoni BWC 00:20-00:31; Grimm BWC 00:27-00:31. Active, physical resistance under these circumstances is not protected. *See* ORS 161.260.

---

whether he would have obeyed Hubert's instruction to stay back had he been in uniform. *See* First Krivolenkov Depo. 100:20-101:24. But in any event, even if plaintiff did believe Hubert was merely "some civilian," the other responding officers were in uniform and told him to stay back.

[3] Plaintiff advances a semantics-based argument that because, in their depositions, defendants testified that they "directed," or "instructed," or "advised" him to move, his obligation to comply with the officers was entirely voluntary. Pl.'s Response to City Defs.' Mot. 9. This argument has no basis in the law; by whatever term officers may have used in their depositions, the video evidence clearly shows that defendants were ordering plaintiff to move away from the investigation.

**2. Excessive Force**

In considering a claim for excessive force, courts must ask "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them." *Glenn v. Washington Cnty.*, 673 F.3d 864, 871 (9th Cir. 2011) (citing *Graham v. Connor,* 490 U.S. 386, 397 (1989)). Courts evaluate the reasonableness of a particular use of force by considering: (1) "the type and amount of force inflicted"; (2) "the government's interest in the use of force"; and (3) the balance between "the gravity of the intrusion on the individual against the government's need for that intrusion." *Id*. Summary judgment is appropriate when, "after resolving all factual disputes in favor of the plaintiff," the court concludes that "the officer's use of force was objectively reasonable under the circumstances." *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994).

Here the type and amount of force used was minimal. Plaintiff was tackled to the ground as he attempted to run away from defendant Bigoni. Krivolenkov Video 05:14-05:18; Bigoni BWC 00:24-00:33. Despite being tackled, plaintiff suffered only minor injuries, including scrapes on his right arm and bruises on his right leg, as well as chest pain while Bigoni was on top of him.[4] Declaration of Shawn Lillegren ("Lillegren Decl.") ¶ 3, Ex. 2, June 30, 2026, Krivolenkov Deposition ("Fourth Krivolenkov Depo.") 95:06-95:19. Plaintiff did not seek medical attention for his injuries and during his deposition, he could not even remember which arm had been scraped. Lillegren Decl. ¶ 2, Ex. 1, January 27, 2026, Krivolenkov Deposition ("Third Krivolenkov Depo.") 121:19-122:25. Based on the video evidence, and the fact that plaintiff's injuries were minor to the point where he forgot where he had been injured, the Court concludes that the use of force was

[4] Although Plaintiff alleged that Bigoni's body on top of his risked "potentially causing death by suffocation" there is no evidence that plaintiff was ever in danger of suffocation.

minor. *See Felarca v. Birgeneau*, 891 F.3d 809, 817 (9th Cir. 2018) (courts may "infer from the minor nature of a plaintiff's injuries that the force applied was minimal").

As to the government's interest, courts consider "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. Here, the government's interest was high because the officers believed their safety and the safety of the public was at risk. *See* Kerwin Decl. ¶¶ 3, 13; Hubert Decl. ¶¶ 3, 13; Bigoni Decl. ¶¶ 10-11. Plaintiff entered the crime scene, was standing near a loaded weapon, and refused to follow the officers' warnings to back away from the scene. Bigoni Decl. ¶¶ 10-11. Moreover, as already discussed, plaintiff attempted to evade arrest by pulling his arm out from Bigoni's grip and attempting to run away.

On balance, the officers' use of force was reasonable. The intrusion itself was minimal compared to the government's interests of officer and public safety.

**3. Malicious Prosecution**

To prevail on a malicious prosecution claim under 42 U.S.C. § 1983, a plaintiff must: (1) satisfy the state law elements of malicious prosecution; and (2) demonstrate that the conduct complained of deprived him or her of an existing federal constitutional or statutory right and was committed by a state actor or a person acting under color of state law. *Mata-Gonzalez*, 2013 WL 5476952, at *8 (citations omitted). Here, as discussed above, defendants had probable cause to arrest plaintiff for Interfering with a Peace Officer under ORS 162.247. "Probable cause is a complete defense to false arrest and malicious prosecution claims under both federal and Oregon law." *Peebles v. Yamhill Cnty.*, 26 F. App'x 643, 644 (9th Cir. 2001); *see also Freeman v. City of Santa Ana,* 68 F.3d 1180, 1189 (9th Cir.1995); *Gustafson v. Payless Drug Stores N.W., Inc.,* 269

Or. 354, 525 P.2d 118, 119–20 (Or. 1974). Defendants are thus entitled to summary judgment on plaintiff's claim for malicious prosecution.

In summary, defendants are entitled to summary judgment on plaintiff's federal claims. Defendants have put forward evidence that probable cause existed to arrest plaintiff and that the amount of force used in effecting that arrest was reasonable.

The individual defendants are also entitled to qualified immunity. *Reichle v. Howards*, 566 U.S. 658, 664 (2012) ("government officials who violate another's rights are immune from liability under section 1983 unless the unlawfulness of their conduct was clearly established at the time"). "That demanding standard reflects the long-standing principle that qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." *Est. of Hernandez v. City of Los Angeles*, 96 F.4th 1209 1221 (9th Cir. 2024) (internal quotation marks omitted). "The plaintiff bears the burden of showing that the rights allegedly violated were clearly established." *Gordon*, 6 F.4th at 969. Plaintiff here cannot make such a showing. Defendants are therefore also entitled to summary judgment on the basis of qualified immunity.

## II. State-law Claims[5]

In addition to his federal claims, plaintiff asserts state-law claims for assault, battery, false arrest and false imprisonment.

As a preliminary matter, the Court must determine whether retaining supplemental jurisdiction over plaintiff's state-law claims is appropriate. "A district court may *sua sponte* decide whether to continue exercising supplemental jurisdiction over a Plaintiff's state law claims."

[5] This Court determined in a prior order (doc. 21) that the individual officers are not proper defendants under the Oregon Tort Claims Act. ORS 30.265(2). The proper defendants against plaintiff's state-law claims are the City and County entities. The Court will proceed with the summary judgment analysis of plaintiff's state-law claims against those defendants only.

*Feezor v. Patterson*, 896 F.Supp.2d 895, 904 (E.D. Cal. Oct. 5, 2012), *aff'd*, 596 Fed. Appx. 558 (9th Cir. 2015) (citations and internal quotations and brackets omitted). Where, as here, a district court dismisses "all claims over which it has original jurisdiction," it may, in its discretion, "decline to exercise supplemental jurisdiction." 28 U.S.C. § 1367(c)(3); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 940 (9th Cir. 2012).

This discretion "enables district courts to deal with cases involving pendent claims in the manner that best serves the principles of economy, convenience, fairness, and comity which underlie the pendent jurisdiction doctrine." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 357 (1988). The Supreme Court has stated, and the Ninth Circuit has "often repeated, that in the usual case in which all federal-law claims are eliminated before trial, the balance of [these factors] will point toward declining to exercise jurisdiction over the remaining state-law claims." *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997) (citation and internal quotations omitted).

Defendants argue that the Court should retain jurisdiction over plaintiff's state-law claims based on the "dispositive nature of the pending motions . . ., the extended discovery period of this case and the fact that the issues in dispute do not involve complex questions of state law." City Defs.' Mot. 23. No party raised an objection to the Court retaining jurisdiction over the state-law claims. Under these circumstances, the Court concludes that retaining jurisdiction over plaintiff's state-law claims is reasonable and consistent with the values of fairness and judicial efficiency.

**A. Plaintiff's False Arrest/False Imprisonment Claim Fails as a Matter of Law**

False arrest, also known as false imprisonment, *Hylton v. Phillips*, 270 Or 766, 767 (1974), is the imposition of unlawful restraint on another's freedom of movement. *Hiber v. Creditors Collection Service of Lincoln County, Inc.*, 154 Or App 408, 413 (1998). Proof that an arrest was supported by probable cause is a complete defense against a false imprisonment claim. *Ross v.*

*City of Eugene*, 151 Or App 656, 663 (1997). Here, as described above, the defendant officers had probable cause to arrest plaintiff for Interfering with a Peace Officer under ORS 162.247. Thus, plaintiff's claim for false imprisonment fails and defendants are entitled to summary judgment.

**B. Plaintiff's Assault and Battery Claims Fail as a Matter of Law**

"Assault" is an intentional attempt to do violence to the person of another, coupled with the present ability to carry that intention into effect. *Olsen v. Deschutes County*, 204 Or App 7, 24 (2006). "Battery" is unlawful touching or striking of another done with the intention of bringing about a harmful or offensive contact not consented to or privileged or justified. *Cook v. Kinzua Pine Mills,* 207 Or. 34, 48-49, 293 P.2d 717 (1996).

Defendants are entitled to summary judgment on plaintiff's claims for assault and battery. First, plaintiff has presented no evidence that defendants acted with the requisite intent to cause harmful or offensive contact when they arrested him. *Rich v. Cooper*, 234 Or 300, 311 (1963) (noting in an arrest situation, a police officer is presumed to act in good faith in determining the amount of force to be used). Moreover, the use of physical force by an officer making an arrest is authorized under ORS 133.235(4). Likewise, ORS 161.233 affords a privilege as a matter of law for a claim of battery against officers using force as necessary in carrying out their duties. *Gigler v. City of Klamath Falls,* 21 Or App 753, 762 (1975). Thus, because the individual officers were authorized to use physical force in effecting the arrest, and because the level of force the officers used was reasonable, plaintiff's claims for assault and battery fail as a matter of law.

## CONCLUSION

For the above reasons, the County and City defendants' Motions for Summary Judgment (doc. 54) and (doc. 60) are granted. The plaintiff's requests for oral argument are denied as unnecessary. This case is dismissed.

DATED this 29th day of October, 2026.

/s/ Jolie A. Russo
JOLIE A. RUSSO
United States Magistrate Judge